et al. Oral argument not to exceed 15 minutes per side. Mr. Paul for the Plaintiff's Clause. May it please the Court, this is John Kolb. I represent the American Electric Power Service Corporation in their capacity as fiduciary of the American Electric Power Systems Comprehensive Medical Plan. And this appeal involves a claim by the plaintiff that the American Electric Plan against Glory Fitch, the participant of the plan. And the claim seeks to enforce an equitable lien by agreement under the plan terms against settlement proceeds allocated to her for the wrongful death of her son, John D. Fitch. The District Court dismissed the plan's claim against Ms. Fitch, finding that the court, although would have had subject matter jurisdiction under ERISA, and in fact the type of claim that the plan brought, one under ERISA 502A3, the federal courts have exclusive jurisdiction to hear such claims. But the court held that it was divested of the exclusive jurisdiction to hear such claims. By application of the probate exception. We argue that that is error, that the probate exception does not prohibit the federal court's jurisdiction over AEP's claim. And we do that because for several reasons. The first of which is that the claim against Glory Fitch arises from an independent contractual relationship she has with the plan. In other words, we are not seeking to enforce our rights as a creditor of her son's estate and then attach the wrongful death proceeds. We look at the plain language in the plan which says, if the covered person's relatives, heirs, and assigns make any recovery because of the injuries sustained by the covered person, that recovery shall be subject to this provision. There's no question that Glory Fitch was a relative and an heir of John D. Fitch. And that she was her recovery for. Was this the wrongful death recovery? So yes, under Ohio, they brought a claim by the estate. In the probate court, they settled for a fund. Originally it was $600,000. Subsequently they obtained another $500,000. And the court allocated all of that to the wrongful death claims. And zero to the survivor claim of the estate. So then did the probate court order that the amounts be paid to Glory Fitch? And did she actually receive them? So we don't have the answer to that question because the federal court stayed discovery of the matter, pending briefing on the matter. It is our belief that the funds, at least a portion of the funds, were distributed to the allocated wrongful death individuals. The beneficiaries of the wrongful death received some funds. Because she received some funds that were because of any of the wrongful death injuries sustained by John D. Fitch. We can assert our claim against those proceeds directly. And Glory Fitch, as the plan participant, was the one who enrolled in the plan and signed her son up for, her adult son I should say, but signed him up for the benefits under the plan. And should be liable to the terms of the plan. Counsel, this is an overly basic question, but what is it about this claim that brings it, this insurance plan that brings it within the ERISA statute? Why is this matter governed by ERISA? Well this is a self-funded employee benefit plan. So all of the benefits were paid through the assets of the corporation itself rather than through an individual insurance policy. But because she obtained the benefits through her employer, it is an employee benefit plan subject to ERISA. And frankly subject to ERISA's exclusive remedial schemes. In other words, the claims brought under 502A3 is the only claim that can be brought by a fiduciary like AEP to enforce the terms of its benefit plan. Did that answer your question? Certainly if the statute confirms what you're saying, and I assume it does. Certainly. Under ERISA 502A3 or 29 U.S.C. 1132A3, that's part of ERISA's remedial scheme. And part E of that same section provides that the federal courts have exclusive jurisdiction over these types of claims. So you could not bring your claim in the probate court? So I'm glad you asked that question Judge Moore. We have two independent ways to pursue the claim. We could pursue it as a creditor of the estate. In other words, had John D. Fitch been injured in the accident and he had lived and he had recovered money, we would have been able to pursue a claim against him. We could have theoretically, and in fact did, notify the personal administrator of his estate that we had a claim in that estate. And the administrator, under the statute, is supposed to either accept or reject that claim. If the claim is rejected, then the Ohio probate law requires that the creditor go and pursue the claim outside of the probate court to recover that cause of action. And in that situation, had it been properly rejected, we could have gone to the federal district court, asserted our claim, got a judgment that we were entitled to be reimbursed, and then gone back to the probate court to recover any money allocated to the estate. But separate from any claim that we would have against the estate or against the administrator of the estate, we also have an independent action pursuant to our plan language against Ms. Fitch because she made a recovery. And that recovery was because of injuries sustained by the covered person. Now the appellee will argue that it wasn't because of injuries to the covered person. That a reading of that is that under the Ohio wrongful death statute, the damages that they received were for her own pain and suffering as a result of the death of her son. But two things there. Under the terms of the plan, the plan administrator has discretion to interpret these provisions. And it's not unreasonable for them to interpret it in their plain and ordinary meaning. And just like many statutes that include the words because of, it creates a but for analysis. So she made a recovery because of injuries to the covered person. If not for the injuries, he wouldn't have died and therefore she wouldn't have made that recovery. So we think that the plan administrator is well within its discretion to interpret the provisions of the plan to require Ms. Fitch to reimburse the plan from funds that she recovered for wrongful death. We don't need to get into the actual merits of this. We just need to decide was the district court correct in saying that it didn't have subject matter jurisdiction over your claim that you are entitled to, and you're limiting it now to recovery against Glory Fitch, not against any other? That is correct. This case has a fairly complicated procedural history. The claim was asserted into the probate court. When a settlement went through, they submitted a claim to have it allocated. The probate court judge signed that allocation on the same day without a hearing or without providing notice to the plan. Without giving you an opportunity to object. We did not have an opportunity. But our claim isn't contingent upon a misallocation of the funds. That's one of the misunderstandings that I think that the court had. Is your claim contingent on Glory Fitch having the actual money in her hands? Yes. It is contingent upon her having the money in her hands. In fact, it doesn't arise until she has the money in her hands, which is why the proper jurisdiction isn't in the probate court. The probate court, for better or worse, allocated settlement funds to wrongful death. And we believe that those were distributed to Glory Fitch. Our claim didn't arise until she got the money. So the probate court didn't retain jurisdiction over the funds that were paid to her or funds even that will be paid to her. The probate courts, as soon as they decided a certain portion of the funds were for wrongful death, those funds became outside of the estate. They are not subject to the creditors. They go directly to Glory Fitch. And we're arguing under the terms of the plan, when she got those funds, the plan has a lien on those settlement funds under the language in the plan. I want to go back and ask you about something you said right at the beginning. You said she enrolled her son in the plan. Is that correct? That is correct. And then I'm not sure what you said is the significance afterwards. And therefore, she has some sort of contractual relationship with the plan? Sure. She is the employee participant in the plan. And so she is the one that signed her family up for the benefits and should be subject to the provision that says if a relative or recovery is subject to the plan's lien. Okay. So it has to do with her actual involvement with the plan to start with, I'm assuming. Certainly. Arguably, other wrongful death beneficiaries, and there's a lot of case law in the state courts that talk about creditors of an estate having an ability to recover from wrongful death. And that's prohibited. If funds are allocated to wrongful death, the creditors of the estate are not allowed to recover from it because it's not the estate's funds, it's their funds. But here in a situation where we have privity of contract with one of those heirs, and she agreed by getting benefits under the plan for her and her dependents, that if she made a recovery as a result of the injuries to her son, it would be subject to the plan's lien. That lien is enforceable in federal court and it's really not subject to the jurisdiction of the probate court. Okay. Then the key here is her privity. Is that correct? Yes, I believe so. All right. Thank you. Counsel, since we've been talking about the jurisdiction of the probate court, it would appear that your opening brief focuses on whether the district court erred in holding that the probate court had jurisdiction to hear your client's ERISA claim, but does not deprive the federal court of jurisdiction. Why that was erroneous. Does that mean then that you have forfeited the argument regarding the probate exception? In other words, can the probate exception apply even if a probate court otherwise arguably lacks jurisdiction to hear the claim? What would you say about that? Judge Clay, the probate exception comes from the fact that you have a state court, probate court, exercising jurisdiction over a particular race. When that happens, under the prior exclusive jurisdiction doctrine, the federal court won't exercise jurisdiction over the same race. One of the key arguments in our claim to the district court was that the probate court in fact lacked jurisdiction to hear the claim that we would have brought against Glory Fitch. If the probate court lacked jurisdiction, then the probate exception by definition wouldn't apply. I know we focused a lot of the section one of our argument with respect to whether the probate court could even assert jurisdiction over this claim, but the heading certainly says that the court misapplied the probate exception and it was error for them to say that they were divested of jurisdiction because of that. Okay, so your position would be that your failure to expressly address the probate exception doesn't detract from the argument that you're making? I think by definition, by stating that the probate court didn't have jurisdiction, it I've gotten well over my time, but I'm willing to continue to answer. No, that's fine for me. Thank you. We'll give you your rebuttal time. Good morning and may it please the court. The district court here correctly concluded that the probate exception prevented that court from exercising jurisdiction over AEP's claims for equitable liens over wrongful death funds that the probate court awarded to the Fitches. I don't think there's any reasonable disagreement that AEP has abandoned its claim against John Fitch, so this court can affirm the dismissal of the claim against Glory Fitch in one of three ways. First, I think the easiest and cleanest way for the court to do so is to find that AEP forfeited its argument about the probate exception. Second, the court can get into the weeds on the probate exception, determine that it applied, and affirm on the same grounds as the district court. Or third, if the court determines that the probate exception did not apply, it can still affirm for failure to state a claim because the terms of the decision. If the court has a particular direction it wants to steer our conversation toward, I'm happy to take questions. Otherwise, I'd like to touch on forfeiture first. As we noted in our opening brief, AEP's opening brief doesn't discuss the probate exception. It doesn't cite a single case that applied the probate exception, doesn't explain what the exception does, how it works, when it applies, when it doesn't. If the probate court didn't have jurisdiction over an ERISA claim, then why would it be fair to say that the probate exception applies to deprive the federal court of jurisdiction? Well, Your Honor, the probate exception, its focus is on really three things. The court did the probate court exercise NREM jurisdiction over the property? What did the probate court do with that property? And what is the plaintiff in the federal court really asking the federal court to do with that property? AEP is a creditor of Jackson State. AEP was free to appear in the probate court at any time and lodge any of its claims. We've mentioned in our briefs, we cited the Shackleford case. There was a case involving Dillard's administrative committee to illustrate that ERISA plans routinely appear in probate courts to protect their interests. And they are more than capable to argue there that, in fact, in Dillard's, they argued that the court should allocate the funds to the survival of the decedent's pain and suffering, because that would clearly signify that the probate court found that the settlement funds compensated the decedent for the decedent's own injuries. There are really two buckets of claims that a probate court can put settlement funds into. There's the wrongful death claim, which compensates the decedent's next of kin, their survivors, for their own injuries. And then there's the survival claim, which compensates the decedent for his own personal injuries that he suffered from his death, his pain and suffering, those kinds of things. Let me ask a question, if I may. Was this matter in the probate court initially because the decedent's estate was being probated? So your honor, what happened was, under Ohio law, the estate administrator, his duty is to, he can pursue wrongful death claims with anyone who's liable for the wrongful death. And he's allowed to settle those claims either before or after commencing litigation, subject to the probate judge's approval. And so the administrator here did that, pursued those settlements for the wrongful death, and then he had to present those settlements to the probate court. And the probate court had to approve and agree that, yes, these are appropriate settlements, and that they do compensate the survivors, and for how much. So that's why it was initially in there, is they were clearing up all the claims related to Jack's death. So did the probate court then approve the settlement of the wrongful death claims in a particular amount, and then did the probate court distribute those amounts? Yes, your honor. The application that my friend attached to the complaint included a narrative statement that was submitted to the probate court, notified the probate court of AEP's asserted lien that was contested. The probate court approved those settlements, and the probate court issued an order saying, here's who gets how much, and here's why. And it's for their injuries. With respect to the argument today, we're focusing on Glory. And how much did the probate court give her for what reasons? I've got it in my binder. I believe it was about $225,000 that they awarded out of the $600,000 to Glory. And that was for wrongful death? That was completely to wrongful death. The AEP alleged in its complaint that she did. We've assumed for the purposes of briefing that she has received it. So why isn't it timely then for AEP's plan to file a lawsuit under ERISA, as a fiduciary under 502A3, seeking to have Glory pay back the amount that had been expended by the plan for the healthcare in federal court? So we haven't argued that their lawsuit was untimely. We've just said that the federal court can't exercise its jurisdiction. So why not, if it's timely? Why not? Well because the probate court, as part of its decision, it necessarily looked at these settlements and it determined that these are settlements for wrongful death, for Glory's personal injuries, not at all for Jack's injuries. They're for her loss of her son, her loss of his consortium. Right, but Glory has an asset, this $225,000 and the plan paid medical expenses for the decedent. And Glory as an heir under the terms of the plan, assuming that we're getting to the merits, which we're not, we're just deciding jurisdiction, but Glory has an asset and a responsibility to reimburse the plan for expenses that they make on behalf of the decedent. That's half correct, Your Honor. She has a responsibility to repay them if she receives these funds because of Jack's injuries. And the probate court's decision is that these settlements are for her own injury. They're not for Jack's injuries. We have to follow the terms of AEP's plan. And to grant AEP the relief that it requests required the federal district court to look to what the probate court did and it would require the district court to determine that either the probate court wrongly assigned these funds to wrongful death, and that actually those did compensate Glory for Jack's injuries, or basically the court would have to reach into the wrongful death bucket and move the funds that Glory received into the survival claim bucket to determine that the funds attributable to the settlement were for Jack's injuries. On that same subject, the plan doesn't want to pursue anything as a creditor because of the limitations on creditors reaching wrongful death funds. So they rely on a contractual relationship between Gloria and the plan. And why does it make a difference where the money she came from? I understand what you're saying. It allocated it to her for her injuries. But the plan had costs, incurred costs, and so forth. And why aren't those collectible? I think they were contestable, your honor, or collectible, your honor. AEP has a subrogation right under the policy that's very broad. They didn't exercise that subrogation right. They could have gone after the at-fault driver. They could have gone after any of the insurance companies that were responsible for paying for anyone who caused Jack's accident. They also could have appeared in probate court. And they could have advocated, like many ERISA plans have in probate court, for the court to distribute the claims to the survival claim. We're only here because AEP is kind of sat on the sidelines when it knew it could have finished its proceedings to then assert its own claim. They only can recover from her what is traceable to their expenditures. I mean, if she had $10 million, they wouldn't be seeking to recover the $10 million. What's the monetary relationship to what they can recover? So they could recover, assuming we got to the merits, assuming that the court found that the exception did not apply, they could recover up to the amount of benefits that were paid to Jack for his medical, or the amount of benefits that were paid on behalf of Jack's medical care. And that's $101,000 here. So it's less than the amount of the wrongful death proceeds that went to Glory. Correct. ERISA case law also, however, requires a fiduciary like AEP to strictly trace the dollars that go to Glory. AEP hasn't really alleged in its complaints which funds Glory received for because of Jack's injuries, in its opinion, or which were for other injuries that maybe she suffered. They allege in their complaint that I think just the $100,000 settlement was for Jack's injuries. They haven't alleged that Glory received those particular funds as opposed to the father or the brother received those funds. And I think that goes more to the argument that AEP should have appeared in the probate court because now a federal court is having to review what decisions a probate court made. So there was some allegation that I recall in this case that the probate court acted the same day that a request was filed by the beneficiaries of the estate. That's correct. So how could the plan have asserted its interest in the probate court if the probate court had already rendered an approval? So the probate court, it acted on the application a year after Jack's death. Under Ohio law, any creditor who has a claim against the decedent or against the decedent's estate has to lodge that claim within the first six months. AEP obviously paid a lot of money towards Jack's They haven't alleged that they were unaware of Jack's death. Any creditor has a proactive duty to go to a probate court and make a claim when they have one. So they didn't make a claim at all before the one year expired and before the probate court issued its order? They sent a letter to the administrator, I think, seven months after Jack's death. So they clearly knew that Jack had died, but they didn't go to the probate court and enter an appearance like a lot of ERISA plans do. And so the administrator acted without considering the allegations that the plan had that it was owed money? I don't think that's the case, Your Honor. The narrative statement that the administrator submitted to the probate court specifically mentioned that AEP has asserted this claim, that it would be contested. They don't believe it applied. But the court was on notice of this claim. What would be their theory that it wouldn't apply? What would be your theory that it wouldn't apply? Well, because the plan says that the only funds that AEP can recover are those attributable to Jack's injuries. And the administrator negotiated these as settlements for wrongful death. And wrongful death, just as a matter of law, don't have anything to do with it. So there was no settlement for any other purpose than wrongful death? Correct. It was strictly for wrongful death. What about the argument that's made that under this claim, under ERISA, the only place that they could urge it was in federal court? That's the only place, Your Honor, that they can assert a specific ERISA case. A fiduciary is just like any other predator, can certainly appear in the probate court. There was nothing to stop them from doing that. And there was nothing that stopped them from asserting any subrogation claims that they have against anyone who's liable for the accident. This just goes to the specific claim against Gloryfish. Further questions? Thank you for your argument. So I just want to clarify a couple of things that came out of the argument. Number one, there were two different settlements in this case. One occurred long after the plan filed the federal action. There was a $500,000... When you say in this case, what case are you talking about? The probate case or the ERISA case or... There were three separate pots of money that the estate recovered that was then allocated by the probate court. The first one was a $500,000 liability settlement. The second one was a $100,000 med pay settlement. And the third one was a $500,000 UIM settlement. Initially, the probate court ruled, and what was submitted before them on application was a generic $600,000 settlement, which included the $500,000 liability and $100,000 med pay. The probate court was not notified that the $100,000 was from medical payments coverage, which could only be for medical expenses. Yes, there was a narrative statement that said generically that Anthem, the plan's claim administrator, was asserting a claim for subrogation. But there was no distinction as to whether the plan was pursuing a claim against Glory Fitch, because there were no claims to be allocated at that time. Presumably, had the probate court been properly advised, they would have allocated some portion of that medical payment coverage to the estate for medical expenses, because under the law, under the policy, it has to be for medical or funeral expenses. And under the law, wrongful death can't include those expenses. But all that would be pertinent if we were asking, or it was necessary in our claim against Glory Fitch, for the probate court or the federal court to take the probate court's allocation and reallocate it to medical expenses. We don't have to do that in our claim against Glory Fitch. We argue that she recovered, and I think from all told settlements, it was over $400,000 that she recovered when you include the UIM and everything allocated to her for wrongful death. But all we have to do is show that the recovery was because of injuries to Jack. That doesn't mean it was for his medical expenses. As a matter of fact, the plan and sections say that the recovery won't affect the plan's lien. The question with respect to interpreting the language is, is ABP unreasonable in interpreting its language to say that Glory Fitch made a recovery because of Jack's injuries when she recovered for her own damages of wrongful death that she suffered related to his death. We think that just under the common sense reading of the because of, it's a but for causation. If there hadn't been the injuries, there wouldn't be the death, and then there wouldn't have been the recovery. Could you file a claim against, hypothetically, the father or the siblings of Jack if they had received money according to the probate court order? That is hypothetically yes, but I don't know that the claim is near as strong as it is against Glory Fitch because there is privity of contract. I don't think that either Glory Fitch by signing up to the plan or John D. Fitch by receiving benefits can necessarily impact the independent recovery rights of the father and the brother. Glory is different because she did sign on to the plan. She did agree to the plan terms, and she benefited by having her son receive those medical benefits. So is the essence of your argument that the probate exception to federal jurisdiction should not apply here, that once the money is transferred to Glory, that then the plan to file a claim against Glory does not impact the probate court's jurisdiction because the race has passed from the probate court control to Glory? That is correct. The race has passed, and the probate court itself, the Ohio courts have determined that causes of action involving a contract to a beneficiary or to an heir of an estate is enforceable outside of the probate court, and the probate courts do not have jurisdiction over those independent contractual claims. So there are two reasons there. I'm over my time, but can I say one more? Okay, real quick. There's a policy issue at play here, too. We presume that the federal courts created the probate exception, even though it is somewhat questionable in origin, as the court has said in Chevrolet v. Estate of Barnhart, that it did so because federal courts are generally not in the business and don't have the proficiency to administrate wills and estates. That's not what they do. But Congress certainly, we understand that part of the argument. Thank you, Your Honor. Thank you both for your argument, and the case will be submitted, and the clerk may call the next case.